**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 26-24917-CIV-DAMIAN**

**NELSON VLADIMIR GONZALEZ**
**DEL PINO RODRIGUEZ**,

Petitioner,

v.

**KROME NORTH SERVICE**
**PROCESSING CENTER,** *et al.*,

Respondents.
_______________________________________/

**ORDER ON PETITION FOR WRIT OF HABEAS CORPUS**

**THIS CAUSE** is before this Court on Petitioner, Nelson Vladimir Gonzalez Del Pino Rodriguez's ("Petitioner"), *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, filed July 20, 2026. [ECF No. 1 (the "Petition")]. Respondents filed a Response to this Court's Order to Show Cause on August 14, 2026 [ECF No. 6 (the "Response")], and Petitioner filed a Reply on August 25, 2026 [ECF No. 7 (the "Reply")]. Because the Response left material factual questions unresolved, this Court entered an Order Directing Respondent to File Response on August 31, 2026. [ECF No. 8]. On September 4, 2026, Respondents filed the Supplemental Response. [ECF No. 9 (the "Supplemental Response")]. Petitioner did not file a reply to the Supplemental Response, and the time to do so has passed.

THE COURT has reviewed the Petition, the Response, the Reply, the Supplemental Response, the relevant legal authorities, and the pertinent portions of the record and is otherwise fully advised.

## I. BACKGROUND

The background relevant to Petitioner's immigration history and proceedings is laid out in further detail in the Response and set forth here as relevant to the issues now before this Court.

Petitioner is a native and citizen of Cuba who was paroled into the United States in January 1996. *See* ECF No. 6-2 ¶¶ 5–6 ("Declaration"). On December 20, 2004, an Immigration Judge ordered Petitioner removed to Cuba, and Petitioner did not appeal the removal order. *Id.* ¶ 10; see also ECF No. 6-4 ("Removal Order") at 3. Petitioner was later released from immigration custody under an Order of Supervision ("OSUP") in August 2010, and ICE issued revised OSUP documentation in January 2020. *See* ECF No. 9-1("Supplemental Declaration") ¶¶ 8–10.

On January 12, 2026, U.S. Immigration and Customs Enforcement ("ICE") encountered Petitioner near his residence, issued a warrant for his arrest, and returned him to immigration custody. *Id.* ¶ 11. Respondents now clarify that ICE "purported to revoke" Petitioner's OSUP that same day and served Petitioner with a Notice of Revocation of Release, but the notice was unsigned "due to oversight." *Id.* ¶ 12. The original revocation notice included in the record before this Court is also unsigned by the Field Office Director or designated representative and undated. *See* ECF No. 9-2 ("Original OSUP Revocation") at 1.

On March 20, 2026, ICE notified Petitioner that it intended to remove him to Mexico. *See* ECF No. 6-9. On March 27, 2026, ICE attempted to process Petitioner for third-country removal to Mexico, but Petitioner refused to exit his pod. *See* Supp. Decl. ¶¶ 13–14. Respondents state that ICE was prepared to effectuate the removal, that Mexico does not require travel documents for Cuban nationals, and that Mexico did not have an opportunity

to accept or deny Petitioner at the border because Petitioner refused to leave his pod. *See Id.* ¶¶ 14, 21.

ICE subsequently conducted a post-order custody review. On June 20, 2026, ICE provided Petitioner with notice of a file custody review and a warning for failure to depart, and ICE ultimately decided to continue detention following its 90-day review. *Id.* ¶¶ 15–16. On August 13, 2026, ICE conducted an informal interview, issued another Notice of Revocation of Release, and served Petitioner with a notice of failure to comply based on his March 27 refusal to exit the pod. *See Id.* ¶¶ 17–18. ICE also conducted a 180-day post-order custody review panel interview that day; as of September 4, 2026, the headquarters decision remained pending. *Id.* ¶ 19.

In the Petition, Petitioner challenges his continued post-removal-order detention under *Zadvydas v. Davis*, 533 U.S. 678 (2001), and asserts that his detention has exceeded six months and that there is no significant likelihood of removal in the reasonably foreseeable future. Pet. at 9–10. In his Reply, Petitioner further argues that his March 27 conduct did not prevent an otherwise executable removal because Respondents had not shown that Mexico had agreed to accept him or that ICE possessed the documentation necessary to remove him. Reply at 1–3. He also argues that ICE violated his procedural due process rights by returning him to custody in January but not providing the informal interview and signed revocation notice contemplated by 8 C.F.R. § 241.4(l) until August 13, 2026. *Id.* at 4–5.

## II. LEGAL STANDARD

District courts have the authority to grant writs of *habeas corpus*. *See* 28 U.S.C. § 2241(a). *Habeas corpus* is fundamentally "a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (citation omitted). A writ may be issued to a petitioner who demonstrates that he is being held in custody in violation of the Constitution or federal law.

*See* 28 U.S.C. § 2241(c)(3). This Court's jurisdiction extends to challenges involving immigration-related detention. *See Zadvydas*, 533 U.S. at 687.

Because Petitioner is proceeding *pro se*, this Court liberally construes Petitioner's submissions.

## III. DISCUSSION

The Petition presents two principal issues: (1) whether Petitioner's continued detention violates the Supreme Court's holding in *Zadvydas*, and (2) whether the defect in the January OSUP revocation entitles Petitioner to release. This Court addresses the issues raised in the Petition in turn.

### ***A. Whether Petitioner Has Established A Violation Under*** **Zadvydas.**

Under 8 U.S.C. § 1231(a), the Government ordinarily must remove a noncitizen within a 90-day removal period and must detain the noncitizen during that period. 8 U.S.C. § 1231(a)(1)(A), (a)(2). Section 1231(a)(6) authorizes detention beyond the removal period for specified categories of noncitizens. In *Zadvydas,* the Supreme Court held that that authority extends only for a period reasonably necessary to accomplish removal. 533 U.S. at 689, 699. The Court explained that in those circumstances, detention for six months is presumptively reasonable. *Id*. at 701. After that period, once a petitioner "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the Government must respond with evidence sufficient to rebut that showing. *Id*.

The removal period may be extended, however, if the noncitizen "fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C). The Eleventh Circuit has recognized that a petitioner cannot establish a violation under *Zadvydas* where his own noncooperation is the barrier to removal.

*See Oladokun v. U.S. Att'y Gen.*, 479 F. App'x 895, 897 (11th Cir. 2012); *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 & n.4 (11th Cir. 2002).

Petitioner has now been detained since January 12, 2026, more than six months. [ECF No. 9-1 ¶ 11]. The passage of six months, however, does not itself require release. *Zadvydas*, 533 U.S. at 701Respondents have supplied evidence sufficient, on the present record, to rebut that Petitioner's showing that the failure to remove him demonstrates a contravention of the standards set forth in *Zadvydas*.That is, the present record does not support Petitioner's assertion that ICE has made no concrete effort to remove him.

The record reflects that ICE notified Petitioner on March 20, 2026, that it intended to remove him to Mexico. *See* ECF No. 6-9. One week later, ICE attempted to process that removal, but Petitioner refused to exit his pod. *See* Supp. Decl. ¶ 14. In response to this Court's request for clarification, Respondents supplied sworn testimony that ICE was then prepared to effectuate Petitioner's removal, that Mexico does not require Cuban nationals to possess travel documents for removal to Mexico, and that Mexico could not accept or reject Petitioner at the border because Petitioner refused to leave his pod. *Id*. ¶¶ 14, 21.

Petitioner is correct that Respondents have not shown that Mexico affirmatively agreed in advance to accept him. But Respondents' evidence explains why no such determination was made: according to the sworn declaration, Petitioner's refusal prevented ICE from presenting him at the border, where Mexico would have had the opportunity to accept or deny him. *Id*. ¶ 14. On this record, the absence of an advance acceptance does not establish that removal was impossible or that Petitioner's conduct was immaterial. Rather, the evidence shows that Petitioner prevented the Government from completing the removal process it had undertaken.

That distinction matters under § 1231(a)(1)(C). The statute extends the removal period when a noncitizen "acts to prevent" removal. 8 U.S.C. § 1231(a)(1)(C). The Eleventh Circuit has likewise recognized that a petitioner's own conduct may interrupt the running of the removal period. *See Akinwale*, 287 F.3d at 1052 n.4. Similarly, in *Oladokun*, the Eleventh Circuit rejected a *Zadvydas* claim where the petitioner's noncooperation was the only barrier to removal and the Government could have removed him but for his misconduct. 479 F. App'x at 897. This Court is satisfied that Respondents have shown that Petitioner's March 27 refusal constitutes an act preventing removal within the meaning of § 1231(a)(1)(C), and the resulting period of noncooperation does not support his claim that detention has become indefinite.

The authority cited by Petitioner does not alter this conclusion. Unlike cases involving no concrete evidence of meaningful removal efforts, Respondents identified Mexico, documented an actual removal attempt, and supplied sworn testimony explaining why Mexico had not yet accepted or rejected Petitioner and why travel documents were unnecessary. [ECF No. 9-1 ¶¶ 13–14, 21]. Respondents identify no later attempt after March 27, stating instead that ICE "will continue to attempt removal to Mexico." [ECF No. 9 at 2; ECF No. 9-1 ¶ 21]. That limited information does not establish that removal efforts have ceased or that removal is no longer significantly likely in the reasonably foreseeable future.

Accordingly, even if Petitioner had provided some evidence that there is no significant likelihood of removal in the reasonably foreseeable future, Respondents have supplied evidence sufficient, on the present record, to rebut that showing. *See Zadvydas*, 533 U.S. at 701; *Akinwale*, 287 F.3d at 1052. Petitioner's request for release on the basis of prolonged detention is therefore due to be denied.

***B. The Defect in the January OSUP Revocation.***

Petitioner separately argues that ICE violated the procedures governing revocation of his OSUP. Reply at 4–5. Respondents initially asserted that the August 13, 2026 informal interview and revocation satisfied the regulation. Resp. at 11–13. After this Court requested clarification concerning the legal and factual basis for Petitioner's detention between January 12 and August 13, Respondents acknowledged that ICE had "purported to revoke" the OSUP on January 12 but that the notice was unsigned due to oversight. Suppl. Resp. at 1; see also Supp. Decl. ¶ 12. Respondents further acknowledge that the informal interview occurred on August 13, 2026. *See* Supp. Decl. ¶ 17.

Section 241.4(l) permits ICE, in its discretion, to revoke release and return a noncitizen to custody. 8 C.F.R. § 241.4(l)(2). But the regulation also prescribes procedures following revocation: the noncitizen must be notified of the reasons for revocation and "will be afforded an initial informal interview promptly after his or her return to Service custody" so that the noncitizen may respond to the reasons for revocation. *Id*. § 241.4(l)(1), (2). If release is not reinstated, further custody review will ordinarily occur within approximately three months. *Id*. § 241.4(l)(3).

Based on a review of the record, it does not appear that Respondents complied with the requirement of a prompt informal interview in January. Petitioner was returned to custody on January 12, 2026, yet Respondents identify no informal interview until August 13, 2026—approximately seven months later. See Supp. Decl. ¶¶ 11–12, 17. Nor does the unsigned January notice itself demonstrate that the required interview occurred. [ECF No. 9-2]. Respondents' statement that the August process "cured" the earlier oversight does not establish that the January-to-August delay complied with the regulation's promptness requirement.

That conclusion does not, however, itself establish that Petitioner is entitled to release from his current detention. By August 13, ICE had conducted the informal interview, issued a new revocation notice, afforded Petitioner an opportunity to respond, served a notice of failure to comply, and conducted the 180-day custody-review interview. *See* Supp. Decl. ¶¶ 17–19. Respondents argue that these proceedings "cured any prior oversight" in the January revocation. Supp. Resp. at 6. Although the August proceedings do not establish that ICE complied with § 241.4(l)'s requirement that the informal interview occur "promptly" after Petitioner's return to custody, Petitioner identifies no authority establishing that the earlier delay, standing alone, requires his release after ICE subsequently provided the prescribed process and where his continued detention is otherwise authorized under § 1231. Accordingly, this Court need not determine whether the August proceedings retroactively cured the earlier regulatory violation. On the record and authorities presented, Petitioner has not established that the earlier procedural defect entitles him to release from his present detention.

Nor must this Court decide the full scope of § 1252(g) or § 1252(a)(2)(B)(ii) as applied to a claim limited to procedural compliance with § 241.4(l). Even assuming this Court has jurisdiction to review that procedural claim, the record establishes that ICE provided the notice and informal interview contemplated by § 241.4(l) on August 13, and Petitioner has not identified authority establishing that the earlier delay requires his release from detention that otherwise remains authorized under § 1231. Without endorsing the approximately seven-month delay in providing the informal interview required by the regulation, this Court finds that the Petition does not establish a basis for relief on that ground.

### *C. Other Grounds Raised In The Petition.*

Petitioner also argues that continued detention violates substantive due process and that he can be safely released under conditions of supervision. Pet. at 9–10. Those arguments depend on his premise that removal is not significantly likely in the reasonably foreseeable future. For the above discussed reasons, the present record does not establish that premise. Petitioner's family, employment, religious, and community ties are supported by the materials attached to the Petition. *See* ECF No. 1-1. Although such considerations may bear on ICE's administrative custody determination under § 241.4, they do not independently establish that removal is not significantly likely in the reasonably foreseeable future or otherwise establish entitlement to release under *Zadvydas*.

## IV. CONCLUSION

Accordingly, for the reasons set forth above, it is hereby

**ORDERED AND ADJUDGED** that Petitioner, Nelson Vladimir Gonzalez Del Pino Rodriguez's, Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 **[ECF No. 1]** is **DENIED WITHOUT PREJUDICE**.

It is further **ORDERED** that the Clerk of Court is **DIRECTED** to **CLOSE** this case. All pending motions, if any, are **DENIED AS MOOT**.

**DONE AND ORDERED** in Chambers in the Southern District of Florida, this 5th day of October, 2026.

**MELISSA DAMIAN**
**UNITED STATES DISTRICT JUDGE**

cc: Counsel of Record

Nelson Vladimir Gonzalez Del Pino Rodriguez, A# 074127721
Krome North Service Processing Center
18201 SW 12th Street (Inmate Mail/Parcels)
Miami, FL 33194